1  Scott A. Kamber (not admitted)
   skamber@kamberlaw.com
2  David A. Stampley (not admitted)
   dstampley@kamberlaw.com
3  KamberLaw, LLC
   100 Wall Street, 22nd Floor
4  New York, New York 10005
   Telephone: (212) 920-3072
5  Facsimile: (212) 920-3081

6  Avi Kreitenberg (SBN 266571)
   akreitenberg@kamberlaw.com
7  KamberLaw, LLP
   1180 South Beverly Drive, Suite 601
8  Los Angeles, California 90035
   Telephone: (310) 400-1050
9  Facsimile: (310) 400-1056

10 Attorneys for Plaintiff

**FILED**

E-filing

NOV - 5 2010

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

ISS

HRL

11            **UNITED STATES DISTRICT COURT**

12        **NORTHERN DISTRICT OF CALIFORNIA**   C 10 5035

13               **SAN JOSE DIVISION**

14  JASON WEBER, Individually and On          CASE NO.: _____
    Behalf of a Class of Similarly Situated
15  Individuals,                              JURY DEMAND

16                    Plaintiff,              CLASS ACTION COMPLAINT FOR
                                              VIOLATIONS OF:
17  v.
                                              1. ELECTRONIC COMM. PRIVACY ACT,
18  GOOGLE INC., a Delaware Corporation,         18 U.S.C. § 2510

19                    Defendant.              2. COMPUTER FRAUD & ABUSE ACT,
                                                 18 U.S.C. § 1030
20
                                              3. CAL. BUS. & PROF. CODE § 17200
21
                                              4. CAL. CIV. CODE § 1750
22
                                              5. UNJUST ENRICHMENT
23

24      Plaintiff Jason Weber ("Plaintiff"), through his attorneys, KamberLaw, LLC, brings

25  this complaint on behalf of himself and all other similarly situated individuals (each a "Class

26  Member" of the putative "Class"). The allegations in this complaint about his actions and

27  observations are based on his own personal knowledge. The other allegations he makes in this

28  complaint are based on information he has learned through his attorneys and that he believes is

Class Action Complaint                    1

1   true. He believes these other allegations will be supported by substantial evidence that will

2   result from discovery and further investigation in this matter.

## I. NATURE OF THE CASE

4       1.      This action arises out of Plaintiff's downloading and use of software provided

5   by Google, known as the Google Toolbar ("Toolbar"), designed to aid users in searching and

6   browsing the web. For some of Toolbar's features to work, such as features to display

7   additional information about the web page the user is viewing, Toolbar transmits to Google

8   certain information about the user's web activity, including the specific pages the user views.

9       2.      Despite Google's claim that a user can maintain web-browsing privacy by

10  disabling these features, including temporarily, Google's statements have been incorrect. In

11  reality, the functions that supposedly turned off Toolbar or its transmission features only

12  turned off the *display* of Toolbar in the user's browser window. Toolbar itself continued to

13  function in the background, transmitting to Google the address of every web page viewed by

14  the user, along with information that identified the individual user.

15      3.      For many months, Google knew about serious discrepancies between what it

16  said about Toolbar and how Toolbar actually functioned. However, Google failed to take any

17  corrective action until late January of this year, after publicity revealed the details of Toolbar's

18  improper data collection. Google still has not taken steps to purge the improperly collected and

19  highly personal data that Toolbar improperly collected.

## II. JURISDICTION AND VENUE

21      4.      This Court has subject-matter jurisdiction over this action pursuant to 28 United

22  States Code, Section 1331.

23      5.      Venue is proper in this jurisdiction pursuant to 28 United States Code, Section

24  1391 because Defendant Google is a corporation headquartered in Santa Clara County,

25  California and, therefore, resides in this judicial district.

26      6.      In addition, venue is proper in this jurisdiction because a substantial part of the

27  events or omissions giving rise to the claims asserted in this complaint occurred in, were

28  directed from, and emanated from within this judicial district.

Class Action Complaint                           2

### III. PARTIES

7.      Plaintiff Jason Weber is a resident of Kings County in the State of New York and has at all times relevant to the complained-of conduct has been a Google Toolbar user.

8.      Defendant Google Inc. ("Google") is a Delaware corporation with its principal place of business in Santa Clara County at 1600 Amphitheatre Parkway, Mountain View, California 94043. Google's presence spans the globe. It operates hundreds of thousands of servers in data centers worldwide. In addition, Google maintains at least 23 office locations in the United States with offices in 39 other countries.

### IV. STATEMENT OF FACTS

9.      Google makes money by showing advertisements to Internet users. In 2009, 97 percent of its nearly $24 billion in revenue came from advertising, the same proportion as 2008.

10.      Consumers who choose to interact with Google do so main by using its popular search engine. However, Google interacts with consumers on a far greater scale, by displaying ads on millions of websites, some of which are its syndicated search partners and millions more of which are third-party web sites that make up the "Google Network."

11.      In addition, Google displays online advertisements in the course of providing over 40 Google-branded services and software offerings, such as its search engine and web-based applications such as GMail, YouTube, and Google Docs; mobile device versions of Google services; and downloadable software such as Toolbar.

12.      Toolbar is software that users can download from the Internet and install on their personal computers to help them browse websites.

13.      Google reportedly told *PC World* that Toolbar runs on "hundreds of millions" of computers. "Google Toolbar Tracks Some Browsing Even When It's Not Supposed To," *PC World*, Jan. 25, 2010, http://www.pcworld.com/article/187670/google_toolbar_tracks_some_browsing_even_when_its_not_supposed_to.html (last visited Feb. 15, 2010).

**A.      Google's Collection and Retention of User Information**

14.      With products such as Toolbar, Google acquires a great deal of information

---

Class Action Complaint                                3

about users' Internet activities, adding to the already substantial information it acquires by providing a search engine, network advertising, and more. However, as detailed in the Statement of Facts, below, Google does not adequately or accurately disclose the extent of its collection of Toolbar users' data; Google does not fulfill its own promises to provide timely disclosure and opt-out mechanisms; and the opt-out mechanisms Google has offered have not always functioned as advertised. As further detailed in this complaint, the net effect is that many users transmit information about themselves and their online activities to Google that they intended to keep private.

15.     Once installed on a user's personal computer, Toolbar appears near the top of the user's web browser display as a row that includes a fill-in box for performing Google searches, as well as several buttons that activate Toolbar's basic features such as spell-checking and web page language translation. *See* Figure 1, below.

Figure 1. Toolbar appearance





16.     Toolbar routinely transmits to Google certain information about a Toolbar user including:

    a.     the identifying and tracking information that is stored in Google's cookies on the user's computer;

    b.     the IP address that uniquely and persistently identifies the user's specific personal computer;

    c.     the unique application number(s)—essentially serial numbers—unique to the particular Toolbar software installed on a given computer.

Class Action Complaint                              4

17.    If a user activates certain "advanced features" of Toolbar, Toolbar transmits to Google the full Uniform Resource Locator ("URL") of every web page requested by the user. "Path information" in a URL identifies the specific web page or Internet resource viewed or downloaded by a user. By analogy to a library book, URL information is equivalent to identifying which book and which page in that book was viewed by a reader. *See, e.g.*, Figure 2, below. URLs may reveal a user's inquiries about medical, political, religious, cultural, or financial matters.

Figure 2.  Sample URLs containing path information
<u>Underscore</u> = path information
*Page title* = text typically displayed in upper left corner of browser window.)

---

(a)  http://clinicaltrials.gov/ct2/show/<u>NCT00809445</u>
*Page title*: "Rapid HIV Testing and Counseling – Full Text View – Clinical Trials.gov"

(b)  http://da.co.la.ca.us/<u>domv.htm</u>
*Page title*: "LADA Domestic Violence Hotline"

(c)  http://www.msnbc.msn.com/id/<u>21478416</u>
*Page title*: "Which is worse: foreclosure or bankruptcy? – Answer desk – msnbc.com?"

(d)  http://www.cs.uiowa.edu/ejjung/courses/f08196/lectures/<u>-deanonymization.pdf</u>
*Page title*: "Robust De-Anonymization of Large Sparse Datasets"

(e)  http://www.saintmichaelschurch.org/<u>connect/aa.html</u>
*Page title*: "St. Michael's Church – New York" (Alcoholics Anonymous and AL-ANON meeting information)

(f)  http://www.medscape.com/viewarticle/<u>702506_4</u>
*Page title*: "Evaluation and Treatment of Torture and Refugee Trauma: Mental Health Treatment for Torture Survivors"

(g)  http://www.wfmz.com/news/<u>22406766/detail.html</u>
*Page title*: "Some Fear Not Enough Being Done To Protect Illegal Immigrants In Census Collection – News Story – WFMZ Allentown"

---

18.    Path information is not the only revealing content that may be included in a URL. Often, a URL includes a "query string." A query string is a set of instructions telling a website what information to display on the selected web page.

---

Class Action Complaint                        5

19. For example, search engines often display results as a web page, the URL of which contains the user's search criteria embedded as a query string. A URL's query string may include personal, sensitive, or confidential information. *See, e.g.*, Figure 3, below.

20. For example, users often perform searches on their names or their credit card, social security, or unlisted phone numbers to see if their personal information is available on the Internet or to investigate identity theft. *See Gonzales v. Google*, Declaration of Matt Cutts [Google Senior Staff Software Engineer] at 9, Case No. 5:06-mc-80006-JW (N.D. Cal., Feb. 17, 2006). In addition, users often mistakenly enter passwords or other account credentials in a search box.

Figure 3. Sample URLs containing website name + query string
Underscore = query string
**Bold** = search term and/or personal information

(a) http://208.114.97.178:1111/-usg/process?username=**01894484DB-SMITH8016**&password=-**12345**&RLF=http://portal.ICServices.mtnsat.com/err.aspx&OS=CAFE.SEAMOBILE.COM
*Page title:* "process" (unencrypted shipboard wireless account login that includes username and password in clear text)

(b) http://www.altavista.com/web/results?itag=ody&q=%2B**government**%2B**domestic**%2B**surveillance**%2B**political**%2B**action**&kgs=1&kls=0
*Page title:* "Alta Vista Search:government domestic surveillance political action"

(c) http://answers.yahoo.com/question/index?qid=20100202164829AAhRrJF
*Page title:* "Can I get birth control at 16 without parental consent?"

(d) http://assignments.uspto.gov/assignments/q?db=pat&asnrd=**JONES, JAY, -MS.**
*Page title:* "USPTO Assignments on the Web" (search of government database for patent assignments by Jay Jones)

(e) http://newyork.craigslist.org/search/m4m/mnh?query=**nonsmoker**&catAbbreviation=**m4m**&**minAsk=35**&neighborhood=**124**&**hasPic=1**
*Page title:* "new york men seeking men classifieds – craigslist" (search of Manhattan personals ads containing the word "nonsmoker" posted by persons over 35 or older in the Soho area and whose ads include images)

Class Action Complaint                    6

> (f) http://web2.westlaw.com/search/default.wl?tc=1001&rltdb=-
>     CLID_DB9999999999&db=**NY-CS-ALL**&sv=Split&eq=search&tf=-
>     2004&method=TNC&action=Search&query=**breach+/3+privacy**&mt=297
>     &fn=_top&vr=2.0&rp=/search/default.wl&ifm=NotSet&rs=WLW9.11
>     *Page title:* "Search - NY-CS-ALL - BREACH /3 PRIVA" (search of legal
>     database for court cases in a particular jurisdiction and containing certain
>     words)
>
> (g) http://www.linkedin.com/ppl/webprofile?action=vmi&id=**99999999**&pvs=-
>     pp&authToken=QQCI&authType=name&trk=ndir_viewmore&lnk=-
>     **vw_pprofile**
>     *Page title:* "Profile | LinkedIn" (request to view a particular member profile
>     on a social network website)

21.     Google admits that it receives personally identifying information contained in search queries and URLs transmitted by Toolbar. Google Inc., *Google Toolbar Privacy Notice*, http://toolbar.google.com/privacy.html (last visited Feb. 15, 2010) ("[I]t is possible for ... queries [and] page addresses ... to contain such [personally identifying] information").

22.     Google also acknowledges that the query string portion of a URL can typically be identified by the question mark character preceding it (indicated by the underscore in Figure 3, above).

23.     Despite the fact that Toolbar could easily discard the query string portion of a URL before transmitting the URL to Google servers, Google offers no explanation for its failure to do so.

24.     Google's Terms of Service require each user to grant Google a broad, perpetual, and irrevocable license to use user-provided content in its business and to transfer such content to third parties of Google's choosing. *See* Google Inc., Terms of Service, "Content Licence from You," §§ 11.1-11.2, http://www.google.com/accounts/TOS (last visited Mar. 16, 2010). In addition to Google's use and sharing of data permitted by its Terms of Service, user data retained by Google may pose user consequences that lie outside Google's control.

25.     For example Toolbar data is subject to disclosure in civil proceedings and under government subpoena. *See, e.g., Gonzales v. Google, Inc., 234 F.R.D.* 674, 688 (N.D.Cal. 2006) (order denying Justice Department's motion to compel Google to comply with subpoena

1    of 5,000 search queries but granting motion to compel disclosure of 50,000 URL requests).

2        26.    Google's practices regarding user data and privacy are of public interest and are

3    highly material to consumers in their decisions to use Google services and software in light of:

4    (1) the massive amounts of user data Google acquires as the leading search service provider;

5    (2) the personal and often sensitive content of some of that data; (3) Google's apparently-

6    unfettered retention and use of the user data it receives; and (4) the potential for Google's

7    disclosure of user data to third parties.

8        27.    In the case of Toolbar, this materiality is further borne out by the fact that

9    Google, itself, purports to disclose its data practices and mechanisms for users to exercise

10   choice and control over what data is transmitted to Google.

11       28.    In fact, Google specifically promises users that they can control the operation of

12   certain Toolbar features with special privacy consequences. In particular, Google promises that

13   these features "only operate and transmit data if you choose to enable them." Google Inc.,

14   *Google Toolbar—Toolbar Help—Review Privacy Details: Enhanced Features*,

15   http://www.google.com/support/toolbar/bin/answer.py?hl=en&answer=162423 (last visited

16   Feb. 16, 2010). Furthermore, Google's Privacy FAQ promises:

17          Some Google services (such as Google Toolbar) enable you to opt-in or
           opt-out of sending URLs to Google . . . . *When you sign up for any such*
18         *service, you will be informed clearly that the service sends URLs to*
           *Google, and whether and how you can opt-in or opt-out.*
19

20   Google Inc., *Privacy FAQ*, http://www.google.com/privacy_faq.htm (last visited Feb. 15,

21   2010) (emphasis added).

22       29.    As a result, it is also material to Toolbar users that—as detailed below—Google

23   has provided users inadequate and misleading disclosures regarding Toolbar and the control

24   mechanisms that purport to implement user's Toolbar preferences. Unbeknownst to users,

25   these controls do not work as described.

26   **B.    Google's Inadequate and Misleading Statements about Toolbar**

27   ***Retrogression in Installation Notice and Choice***

28       30.    At one time, users installing Toolbar received clear and conspicuous notice that

Class Action Complaint                         8

1    their installation choices could have privacy consequences. Recognizing the material privacy

2    implications, Google specifically drew users' attention to this important decision with forceful

3    red text at the top of the screen. Users could activate Toolbar's "advanced," URL-transmitting

4    features only through an opt-in process, and the selection buttons to opt in or not opt in were

5    presented with equal prominence. See 2004 version of Toolbar installation dialog, Figure 4 on

6    page 9. Neither option operated as a default selection; merely pressing Space or Enter would

7    not activate either option. By labeling Toolbar's URL-transmitting features as "advanced"

8    features and by making them available only through a  process requiring an unambiguous

9    affirmative decision, Google properly presented these features as suitable for knowledgeable

10   users.

11
12
13
14
15
16
17
18
19
20
21
22
23



Figure 4. 2004 version of Toolbar installation dialog box

24
25          31.      Some Google pages still retain this more appropriate, "advanced features" label

26   for Toolbar's URL-transmitting features. Indeed, Toolbar's Help pages continue to use this

27   label. See, e.g., "Learn More—Master Advanced Features." Google Inc., Google Toolbar

28   Help, http://toolbar.google.com/privacy.html (last visited Feb. 15, 2010).

Class Action Complaint                              9

32.     However, aside from these remnants, Google has renamed Toolbar's URL-transmitting Toolbar features as "enhanced features" (emphasis added), falsely suggesting that these features are desirable and beneficial for all users.

33.     In addition, in its new Toolbar installation process, Google makes it excessively easy for users to enable Toolbar's advanced features, such as PageRank. For one, Google touts advanced features at the conclusion of each and every Toolbar installation. Because Toolbar is billed as a quick installation (Google promises the Toolbar "installs in seconds"), users are not expecting to make difficult, significant, long-lasting privacy-sensitive decisions during such installation.

34.     Further, the very design of Google's enhanced-features prompt increases the likelihood that users will make an uninformed decision. Google presents a bold-faced heading and three sentences of supposed benefits before finally discussing the crucial privacy detriments of advanced features. *See See* Figure 5, p. 12, below.

35.     Even where Google finally does discuss privacy, Google's text is both internally inconsistent and misleading: Google says "For enhanced Toolbar features to work, Toolbar has to tell us *what site you're visiting* by sending Google *the URL*" (emphasis added). *See* Figure 5(b), p. 12, below. This sentence conflates the concept of "site" (the general address of a web server as whole) and "URL" (a specific individual document or request) – trivializing the privacy consequences of activating Toolbar's enhanced features.

36.     Other aspects of the design of Google's enhanced features prompt further impair users' decision-making on this screen.

a.     The prompt includes a link labeled "privacy policy." *See* Figure 5(c), p. 12, below. However, the Privacy Policy link takes the user to a pop-up display which does not provide the user with the options to search, copy, save or print the lengthy policy. Yet the document discusses advanced Toolbar features only in the 19th paragraph, a location few users are likely to find. Even then, the document misleadingly states:

1

**Enhanced Toolbar features**

2
· Toolbar's enhanced features, such as PageRank and Sidewiki, operate
3
by sending Google the *addresses* and other information about *sites* at
the time you visit them.

4
· *When you use Sidewiki* to write, edit, or rate an entry, *the URL of the
relevant page,* the type of action you performed and the text related to
5
that action are sent to Google and stored with your Google Account.
Your Sidewiki entries are publicly viewable and associated with your
6
Google profile.

7   Google Inc., *Google Toolbar Privacy Notice*, http://toolbar.google.com/ privacy.html

8   (referring to "enhanced features") (last visited Feb. 15, 2010) (italics added).

9           b.      The first bullet, above, describes transmission of "the addresses" of

10  "sites" users visit—again falsely implying that Toolbar transmits mere domain names, not full

11  URLs.

12          c.      The second bullet mentions transmission of URLs to Google, but only

13  in reference to Sidewiki, not PageRank—indicating, inaccurately, that only if a user uses

14  Sidewiki to write, edit, or rate an entry will a web page URL be transmitted. Like the

15  installation dialog box, this buried discussion of PageRank masks and misrepresents the fact

16  that Toolbar transmits to Google the full URL of each web page visited by a user who has

17  enabled advanced features.

18          d.      The installation prompt presents a button to "enable enhanced features"

19  with bold type, more than twice the size of the button labeled "no thanks." *See* Figure 5,  p. 12,

20  below. A user who responds to the installation prompt by merely pressing the enter key or

21  tapping the space bar is taken to have accepted PageRank, purportedly authorizing Google to

22  capture the URL of every single web page the user visits, without further notice or

23  confirmation of any kind.

24          e.      Furthermore, users are particularly unlikely to make informed decisions

25  *at the conclusion* of Toolbar installation: the Toolbar has appeared on-screen, by all indications

26  allowing the users to get back to work without further questions from Google. A privacy-

27  sensitive question asked at this time invites users to make a hasty and ill-considered decision.

28

Class Action Complaint                        11

Figure 5. Toolbar installation



37.     By choosing the misleading "enhanced" name for the privacy-invasive Toolbar features, by explaining these features with the deficient, inaccurate, and deceptive disclosures described above, and by positioning these features for activation with a single accidental tap of the space bar, Google induces users to disclose URL communications they would not have disclosed had they been adequately informed of the consequences and had they been granted a proper means to grant or withhold consent.

38.     Compared to 2004, installation disclosures regarding the privacy implications are now dramatically less clear, less conspicuous, and the advanced features choice less robust. Google's current installation process minimizes the apparent significance of privacy-affecting Toolbar functions and decreases the likelihood that users will fully comprehend the privacy consequences of Toolbar installation.

**C.      Defective Documentation Impairs Users' Ability to Disable Enhanced Features**

39.      Despite promising to provide timely disclosure of Toolbar's URL-transmitting features and an effective mechanism to enable or disable such features, Google fails to provide the promised information and mechanisms. Its Help Center links that purport to lead to information about disabling PageRank, disabling Toolbar, or uninstalling Toolbar do not, in fact, provide such information.

40.      Thus, once a user has enabled Toolbar's advanced features, Google makes it hard to turn back.

***Defective Toolbar Disabling Functions through January 26, 2010***

41.      With no meaningful instructions from Google, users who want to manage Toolbar's URL-transmitting features, such as PageRank, are on their own—a particular burden on novice users more likely to have been induced by Google to activate enhanced features in the first place.

42.      Seeking a method to control the Toolbar, a user might reasonably look to the Toolbar itself, as it appears in the user's browser window. Consistent with standards for browser "plug-in" software, the Toolbar display includes an "X" button in one corner. *See,* Figure 6, below. This "X" is widely understood to mean "exit" or "disable."

Figure 6. Toolbar display (arrow indicates *exit / disable* button)



43.      If a user clicks the "X," Toolbar displays a dialog box that offers choices

Class Action Complaint                    13

1    consistent with what a user would reasonably expect: the dialog box unambiguously offers the

2    user the option of disabling "Toolbar and its features" solely for the user's currently active

3    browser session or disabling Toolbar permanently. The dialog box also includes the message,

4    "To restore Google Toolbar, right-click in an empty area at the top of the browser and select

5    Google Toolbar." *See* Figure 7, below.

6    Figure 7: Disabling Toolbar—confirmation screen



16    44.    However, through January 26, 2010, the statements in the dialog box were

17    untrue. Independent tests show that clicking the "X" button did not actually exit or disable

18    Toolbar. Rather, the "X" button only hid Toolbar from view. Meanwhile, Toolbar continued to

19    collect and transmit data about user Internet activity to Google's servers. *See* Benjamin

20    Edelman, "Google Toolbar Tracks Browsing Even After Users Choose 'Disable'," Jan. 26,

21    2010, http://www.benedelman.org/news/012610-1.html (last visited Feb. 15, 2010).

22    45.    Further, if a user of Internet Explorer 8 used the Manage Add-Ons tool to

23    disable Google Toolbar, Toolbar continued to collect and transmit data in the background for

24    the duration of the user's web-browsing session.

25    46.    Toolbar also continued to collect and transmit data in the background even if a

26    user disabled Toolbar through Internet Explorer's View-Toolbars or right-click options. If a

27    user right-clicked on an empty area of a toolbar, the user received the message shown in Figure

28    8, indicating that the toolbar "will be disabled." Yet Toolbar's transmissions continued

Class Action Complaint                          14

1  unabated, in the background. Disabling of the Toolbar add-on did eventually take effect, but

2  only after a browser restart. *Id.*

3  Figure 8: Disabling Toolbar – confirmation screen



4

5

6

7

8

9

10

11

12

13

14      47.      Google did not advise users that they must restart their browser in order to

15  actually disable Toolbar, nor did Google prompt users to restart their browsers. This behavior

16  did not comport with accepted browser and software configuration practices, which ordinarily

17  notify a user when an additional step, such as a browser re-start or computer re-boot, is

18  required for changes to take effect. Nor did this behavior comport with users' reasonable

19  expectations.

20      48.      Google staff knew about these defects as of November 2009 or earlier.

21  However, rather than promptly fix the problem or at least notify users, Google failed to take

22  corrective action until publicity revealed these defects on or about January 26, 2010.

23  **D.      Interception of Content**

24      49.      Google Toolbar enables users to transmit and receive text, audio, and video

25  content consisting of data transmitted in whole or in part by wire, radio, electromagnetic,

26  photoelectronic, or photooptical systems that affect interstate and/or foreign commerce. Users'

27  communications using Google Toolbar are therefore electronic communications and Google is

28  a provider of an electronic communications service as those terms are defined in the Electronic

Class Action Complaint                          15

1   Communications Privacy Act, Title 18, United States Code, Sections 2510(12, 15). *See also*

2   *Gonzales v. Google*, Google's Opposition to the Government's Motion to Compel at 19, Case

3   No. 5:06-mc-80006-JW (N.D. Cal., Feb. 17, 2006) (in which Google acknowledges that its

4   search services bring it within the Section 2510(15) definition of "electronic communications

5   service provider").

6       50.     Accordingly, Google Toolbar is a device used to acquire the "contents" of

7   communications, as that term is defined in the Wiretap Act, Title 18, United States Code,

8   Section 2510(8), in that Google uses Toolbar and its networks to divert and transfer the

9   substance, purport, and meaning of the communications to Google's networks. Therefore,

10  Toolbar is used to "intercept" the contents of electronic communications, as that term is

11  defined in the Wiretap Act, Title 18, United States Code, Section 2510(4).

12      51.     Google Toolbar, which is designed to send transmissions to and receive

13  transmissions from Google's system, in combination with Google's system, which is designed

14  to send transmissions to and receive transmissions from users' Google Toolbars, are devices

15  and apparatuses used to intercept, retain, and transcribe in-transit electronic communications

16  and are therefore "electronic, mechanical, or other device[s]" as defined in the Wiretap Act,

17  Title 18, United States Code, Section 2510(5).

18      52.     Upon information and belief, which Plaintiff expects discovery to confirm,

19  Google was aware as early as autumn of 2009, if not before, that Toolbar had not been

20  operating as described. Upon information and belief, Google chose not to remediate Toolbar

21  until January 26, 2010, after an independent publication presented video evidence of Toolbar's

22  undocumented operational characteristics' causing nonconsensual transmission of user data to

23  Google.

24      53.     Under some circumstances, Google is authorized to intercept users'

25  communications with other websites. However, whenever Toolbar continued to intercept and

26  transmit users' activities to Google after those users' had correctly activated a command

27  purporting to disable Toolbar and cause such transmissions to cease, Google knowingly and

28  intentionally eavesdropped on and intercepted users' electronic communications captured by

---

Class Action Complaint                        16

1  Toolbar and its networks. Google was not authorized to eavesdrop on and intercept the

2  communications at issue.

3      54.   Google's interception and eavesdropping was not in its normal course of

4  business or a necessary incident to its rendition of services or protection of its rights or

5  property. To the contrary, Google's interception and eavesdropping affected user data Google

6  had explicitly committed not to intercept.

7      55.   Each communication intercepted by Google was between a user and a particular

8  website. Unless that website was Google-owned, Google was neither an originator nor

9  recipient of the user communications intercepted by Google Toolbar and was not a party to

10  such electronic communications as that term is used in the Wiretap Act, Title 18, United States

11  Code, Section 2511(2)(d).

12  ***Computer Tampering and Contamination***

13      56.   Users' personal computers are computers used in and affecting interstate

14  commerce and communication and are therefore protected computers as defined in the

15  Computer Fraud and Abuse Act, Title 18, United States Code, Section 1030(e)(2).

16      57.   Google, through the operation of its systems and Google Toolbar, induced users

17  to download Toolbar knowing that it could not be disabled as advertised but would, instead,

18  continue to transmit user data even when users had taken proper action to disable it and when,

19  to all appearances, it was disabled. Google did so knowingly and with the intent of acquiring

20  such data, and so Google's offering of Toolbar, its deceptive help screens and dialogs, and its

21  operation in tandem with Google's system constituted intentional conduct to defraud users by

22  Google's access of their personal computers, through Toolbar, without authorization and in

23  excess of any authorization. By means of such conduct, Google furthered its intended fraud of

24  obtaining users' confidential Internet communications and, in fact, obtained such

25  communications.

26      58.   Google knowingly caused the transmission of a program, information, code, or

27  command in its distribution and operation of Google Toolbar operating in tandem with

28  Google's systems. Through this conduct, Google intentionally caused damage to users'

Class Action Complaint          17

1    protected computers as follows:

2           a.      Google knowingly caused the installation of software that Google knew

3    did not work as advertised, and that Google knew would enable it to acquire users' URLs, and

4    to do so without authorization. Google lacked authorization in that users had not consented to

5    the downloading, installation, and operation of software containing undisclosed functions to

6    cause the transmission to Google of information that Google said its software would not

7    transmit.

8           b.      Google knowingly subverted the operation of other software on users'

9    computers, such as users' browser toolbar controls, Manage Add-Ons tools, and other

10   mechanisms with which users would reasonably have expected to be able to disable Toolbar.

11   Google did so without authorization, in that users had not consented to the downloading,

12   installation, and operation of software containing undisclosed functions that were designed to

13   prevent users from disabling toolbar and designed to interfere with the operation of users'

14   browser management tools.

15   *Harm*

16          59.     Plaintiff has used Toolbar for a number of years, with PageRank enabled.

17          60.     On a number of occasions, Plaintiff has thought he was disabling Toolbar's data

18   transmission functions by clicking the "X" symbol on the Toolbar display and selecting the

19   option to disable Toolbar operation in the current browser window.

20          61.     Plaintiff did not consent to the data collection by Google subsequent to his

21   disabling of Toolbar and would have taken further steps to prevent transmission of his

22   information to Google had he known of Toolbar's data transmission properties.

23          62.     Google's conduct alleged in this complaint constituted an ongoing course of

24   conduct that harmed Plaintiff and Toolbar users in general, and caused them to incur financial

25   losses, in that:

26          a.      Google, without authorization, acquired the personal information of

27   Plaintiff and Class Members, which information has economic value to Plaintiff and Class

28   Members. Google, through its unauthorized acquisition, diminished the economic value of that

Class Action Complaint                          18

1    information to Plaintiff and Class Members and/or deprived them of its economic value.

2           b.      Google realized significant economic benefits from the conduct

3    described above. Google's purpose in acquiring users' data is to advance its commercial

4    interests. Google's business is the selection and display of advertisements, and its notable

5    success is due, in part, to the data is has amassed about individual users. Google uses such data

6    to profile and track users for ad-serving purposes.

7           c.      Google admits it faces "formidable competition in every aspect of our

8    business, particularly from companies that seek to connect people with information on the web

9    and provide them with relevant advertising." Google Inc., SEC Form 10-K for period ending

10   Dec. 31, 2009 at 15. By misrepresenting the nature of its conduct and the personal information

11   costs associated with using Toolbar, Google deprived users of their right to make adequately

12   informed decisions about whether they would do business with Google or one of its

13   competitors.

14          d.      By that same conduct, Google imposed on users the undisclosed

15   opportunity costs of their choosing to do business with Google and use Toolbar. Google's

16   actions caused users to expend money, time, and resources, and with a cost to their

17   productivity, because of their efforts investigating and attempting to mitigate the operation of

18   Toolbar on their personal computers and attempting to control or remove the persistent data-

19   harvesting software installed without adequate notice by Google or consent from users.

20          e.      Further, Google's installation of Toolbar software with its undisclosed

21   features interfered with, diminished, and devalued users' possessory interests in their personal

22   computers and Internet communications, infringed on users' right to exclude others from

23   unauthorized access to their personal computers, and compromised the integrity, ownership,

24   and operability of users' personal computers.

25          f.      Google's deployment of Toolbar in the marketplace and the ongoing,

26   continuous, automatic operation of Google systems programmed to interact with Toolbar

27   constituted a single act that caused an aggregated loss of at least $5,000 within a one-year

28   period to users affected by Toolbar.

---

Class Action Complaint                    19

1      63.    The costs and harms described above are aggravated by Google's continued

2  retention and commercial use of the improperly acquired user data.

3      64.    The privacy risks for more novice or less sophisticated users are heightened by

4  the fact that, in contrast to the impediments Google imposes on users who seek to exercise

5  controls over Toolbar features, Google makes it exceedingly easy for users to enable Toolbar's

6  advanced features in the first place. Thus, despite Google's assurance that "[o]ther features . . .

7  only operate and transmit data if you choose to enable them," the net effect of the Toolbar

8  design—Toolbar's configuration choices, it's reframing of "advanced features" as "enhanced

9  features," and the quality of its Help and documentation—serve to draw large numbers of users

10  into unknowingly transmitting to Google their every Internet transaction, including their

11  interactions with Google competitors.

12      65.    Even among privacy-aware users, most users do not have the skill or ability

13  necessary to confirm Google's representations and to analyze their Internet communications to

14  detect Google's misconduct, particularly when Toolbar disappears from view and appears to

15  be disabled, but is not. In this regard, Google's behavior is particularly egregious because the

16  users whose information, privacy rights, and economic choices are most affected are those who

17  attempt to utilize available mechanisms to disable Toolbar's advanced features, but who are

18  defeated in their efforts by the deceptive statements of Google and the undisclosed operation of

19  Toolbar.

20                  **V. CLASS ALLEGATIONS**

21      66.    Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3) on

22  behalf of themselves and the following class:

23           All individuals or entities in the United States who, from June 30,

24           2009 to the present, downloaded, installed, and used Google Toolbar
             with the result that their information, including URLs visited, was

25           transmitted to Google without their informed consent.

26      67.    Plaintiff reserves the right to revise this definition of the Class based on facts

27  learned in the course of litigation of this matter.

28      68.    Excluded from the Class are: (i) any judge or magistrate presiding over this

Class Action Complaint          20

1   action, and the court personnel supporting the judge or magistrate presiding over this action,

2   and members of their respective families; (ii) Defendant, Defendant's subsidiaries, parents,

3   successors, predecessors, and any entity in which a Defendant or its parent has a controlling

4   interest; and its current or former employees, officers, and directors; (iii) persons who properly

5   execute and file a timely request for exclusion from the Class; and (iv) the legal

6   representatives, successors, or assigns of any such excluded persons.

7        69.    The Class consists of thousands, if not millions, of individuals and other

8   entities, making joinder impractical.

9        70.    The claims of Plaintiff are typical of the claims of all other Class Members.

10        71.    Plaintiff will fairly and adequately represent the interests of the other Class

11   Members. Plaintiff has retained counsel with substantial experience in prosecuting complex

12   litigation and class actions. Plaintiff and his counsel are committed to vigorously prosecuting

13   this action on behalf of the Class Members and have the financial resources to do so. Neither

14   Plaintiff nor his counsel has any interests adverse to those of the other Class Members.

15        72.    Absent a class action, most Class Members would find the cost of litigating

16   their claims to be prohibitive and would have no effective remedy.

17        73.    The class treatment of common questions of law and fact is superior to multiple

18   individual actions or piecemeal litigation in that it conserves the resources of the courts and the

19   litigants and promotes consistency and efficiency of adjudication.

20        74.    Google has acted and failed to act on grounds generally applicable to Plaintiff

21   and the other Class Members, requiring the Court's imposition of uniform relief to ensure

22   compatible standards of conduct toward Class Members.

23        75.    The factual and legal bases of Google's liability to Plaintiff and other Class

24   Members are the same, resulting in injury to Plaintiff and all of the other Class Members.

25   Plaintiff and the other Class Members have all suffered harm and damages as a result of

26   Google's wrongful conduct.

27        76.    There are many questions of law and fact common to Plaintiff and the Class

28   Members. Common questions for the Class include but are not limited to:

Class Action Complaint                  21

1     a.    whether consumer software provided by Google functioned as

2          advertised;

3     b.    whether Google intended that its consumer software not function

4          as advertised;

5     c.    whether Google's representations regarding the operation and

6          control of its consumer software were deceptive and misleading;

7     d.    whether Google, with Toolbar and against consumers' explicit

8          instructions, caused consumers' electronic communications to be

9          intercepted and transmitted to Google's servers;

10    e.    whether Google's conduct described herein violates the

11         Electronic Communications Act, Title 18 United States Code,

12         Section 2510, et seq. (Wiretap Act);

13    f.    whether and with what *mens rea* Google caused software to be

14         installed on user's computers to transmit data invisibly and

15         defeat the normal operation of users' browser controls;

16    g.    whether Google's conduct described herein violates the

17         Computer Fraud and Abuse Act, Title 18 United States Code,

18         Section 1030, et seq.;

19    h.    whether Google's conduct described herein violates California

20         Unfair Competition Law, California Business and Professions

21         Code, Section 17200, *et seq.*;

22    i.    whether Google's conduct described herein violates the

23         California the Consumer Legal Remedies Act (CLRA),

24         California Civil Code, Section 1750, *et seq.*

25    j.    whether Google's conduct alleged herein, or any part of it, was

26         intentional;

27    k.    whether Google's conduct alleged herein, or any part of it, was

28         knowing;

Class Action Complaint     22

1             l.      whether and to what extent Google has been unjustly enriched

2                      by its conduct;

3             m.     whether and in what manner Google retains and uses user data

4                      improperly acquired through Toolbar; and

5             n.      whether and to what extent Plaintiff and the Class have suffered

6                      harm in the nature of economic loss, other loss, and damage to

7                      their computers.

8    The questions of law and fact common to Class Members predominate over any questions

9    affecting only individual members, and a class action is superior to all other available methods

10   for the fair and efficient adjudication of this controversy.

11   /

12   /

13   /

14   /

15   /

16   /

17   /

18   /

19   /

20   /

21   /

22   /

23   /

24   /

25   /

26   /

27   /

28   /

Based on all the foregoing claims, Plaintiff seeks relief, including relief as provided under the following:

**COUNT I**

**Violations of the Electronic Communications Privacy Act**

**18 U.S.C. § 2510, *et. seq.* (Wiretap Act)**

77.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

78.    Plaintiffs incorporate the above allegations as if fully set forth herein.

79.    Defendants' conduct was in violation of Title 18, United States Code, Section 2511(1)(a) because Defendants intentionally intercepted and endeavored to intercept Plaintiff's and Class Members' electronic communications.

80.    Defendants' conduct was in violation of Title 18, United States Code, Section 2511(1)(d) in that Defendants used and endeavored to use the contents of Plaintiff's and Class Members' electronic communications, knowing and having reason to know the information was obtained through interception in violation of Title 18, United States Code, Section 2511(1).

81.    Through Defendants' interception, endeavoring to intercept, use, and endeavoring to use Class Members' electronic communications, their electronic communications were in fact intercepted and intentionally used, in violation of Title 18, United States Code, Chapter 119. Accordingly, Class Members are entitled to:

a.    such preliminary and other equitable or declaratory relief as may be just and proper;

b.    damages computed as the greater of (i) the sum of the actual damages suffered by Plaintiffs and Class Members plus Defendants' profits made through the violative conduct alleged in this complaint; (ii) statutory damages for each Class Member of $100 a day for each day of violation; or (iii) statutory damages of $10,000 per user;

c.    punitive damages; and

d.    reasonable attorneys' fees and other litigation costs reasonably incurred.

# COUNT II

## Violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et. seq.*

82.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

83.     Defendant violated the Computer Fraud and Abuse Act, 18 United States Code, Section 1030, *et. seq.*, in that Defendant knowingly accessed and, without permission, used, copied, and made use of data, computers, computer systems, and computer networks in order to devise and execute schemes and artifices to defraud, deceive, or extort, and to wrongfully control or obtain money, property, or data, in Defendant's deceptive deployment and operation of Toolbar, which Defendant deployed to gain access to and use of Class Members' Internet activity data emanating from their computers, on which the client-side portion of Toolbar was installed.

84.     Google, through the operation of its systems and Google Toolbar, as set forth above, knowingly and with intent to defraud, accessed users' protected computers without authorization and in excess of any authorization, and by means of such conduct furthered its intended fraud of obtaining users' confidential Internet communications and obtained such communications.

85.     As set forth above, including in the discussion of "Computer Tampering and Contamination," above, Google knowingly transmitted programs, codes, and commands to users' personal computers and intentionally caused damage to protected computers, doing so without authorization and exceeding any level of authorization Google had.

86.     Through the same conduct, Google intentionally caused damage to users' protected computers, doing so without authorization.

87.     Harms and damages to Plaintiff and the Class Members during the period set forth in the factual allegations in this complaint and continuing to the present include the costs of lost personal and business time investigating and rectifying the consequences of Defendant's installation and operation of Toolbar and the consequences of its transmissions, such that economic damages to Plaintiff and the Class Members exceed $5,000 in the aggregate.

1    88.    Plaintiff and the Class Members are therefore entitled to compensatory damages

2    and injunctive relief under 18 United States Code, Section 1030, *et seq.*

3                                  **COUNT III**

4                **Violations of the Unfair Competition Law (UCL)**

5            **California Business and Professions Code § 17200, *et seq.***

6    89.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

7    90.    In violation of California Business and Professions Code, Section 17200 *et seq.*,

8    Defendant's conduct in this regard is ongoing and includes, but is not limited to, statements

9    made by Defendant and Defendant's omissions, including as set forth above.

10   91.    By engaging in the above-described acts and practices, Defendant has

11   committed one or more acts of unfair competition within the meaning of the Unfair

12   Competition Law and, as a result, Plaintiff and the Class have suffered injury-in-fact and have

13   lost money and property—specifically, personal information; the expenses of investigation,

14   mitigation, and remediation; and the opportunity cost of having installed and used Defendant's

15   software.

16   ***Unlawful Business Act and Practices***

17   92.    Defendant's business acts and practices are unlawful, in part, because they

18   violate California Business and Professions Code, Section 17500, *et seq.*, which prohibits false

19   advertising, in that they were untrue and misleading statements relating to Defendant's

20   performance of services and with the intent to induce consumers to enter into obligations

21   relating to such services, and regarding which statements Defendant knew or which, and by the

22   exercise of reasonable care Defendant should have known, were untrue and misleading.

23   93.    Defendant's business acts and practices are also unlawful in that they violate the

24   California Consumer Legal Remedies Act, California Civil Code, Section 1750, *et seq.*; Title

25   18, United States Code, Section 1030, *et. seq.*; and Title 18, United States Code, Section 2701,

26   *et. seq.* Defendant is therefore in violation of the unlawful prong of the Unfair Competition

27   Law.

28   94.    Defendant's business acts and practices are also unlawful in that they violate the

Class Action Complaint                    26

1    California Constitution, Article I, Section 1, which articulates the inalienable right to pursue

2    and obtain privacy, in that, through Toolbar, Defendant willfully interfered with and obstructed

3    users' rights and actual attempts to pursue and obtain the privacy promised by Defendant as an

4    inducement for users to install Toolbar.

5    ***Unfair Business Act and Practices***

6         95.    Defendant's business acts and practices are unfair because they have caused

7    harm and injury-in-fact to Plaintiff and Class Members and for which Defendant has no

8    justification other than to increase, beyond what Defendant would have otherwise realized, its

9    information assets supportive of its advertising revenue.

10        96.    Defendant's conduct lacks reasonable and legitimate justification in that

11   Defendant has benefited from such conduct and practices while Plaintiff and the Class

12   members have been misled as to the nature and integrity of Defendant's products and services

13   and have, in fact, suffered material disadvantage regarding their interests in the privacy and

14   confidentiality of their personal information. Defendant's conduct offends public policy in

15   California tethered to the Consumer Legal Remedies Act, the state constitutional right of

16   privacy, and California statutes' recognition of the need for consumers to be information and

17   equipped to protect their own privacy interests, such as California Civil Code, Section 1798.8,

18   such that consumers may make informed decisions in their choices of merchants and other

19   means of safeguarding their privacy.

20        97.    In addition, Defendant's *modus operandi* constitutes a sharp practice in that

21   Defendant knew and should have known that consumers care about the status of personal

22   information and privacy but are unlikely to be aware of and able to detect the means by which

23   Defendant was conducting itself in a manner adverse to its commitments and its users'

24   interests, through the undisclosed functions of Toolbar. Defendant is therefore in violation of

25   the unfair prong of the Unfair Competition Law.

26        98.    Defendant's acts and practices were fraudulent within the meaning of the Unfair

27   Competition Law because they were likely to mislead the members of the public to whom they

28   were directed.

Class Action Complaint                          27

99.     Plaintiff, on behalf of himself and on behalf of each member of the Class, seeks restitution, injunctive relief, and other relief allowed under the Unfair Competition Law.

### COUNT IV

### Violations of the Consumer Legal Remedies Act (CLRA),

### California Civil Code § 1750, *et seq.*

100.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

101.     In violation of Civil Code, Section 1750, *et seq.*, Defendant has engaged and is engaging in unfair and deceptive acts and practices in the course of transactions with Plaintiff, and such transactions are intended to and have resulted in the sales of services to consumers. Plaintiff and the Class Members are consumers as that term is used in the Consumer Legal Remedies Act because they sought or acquired Defendant's good or services for personal, family, or household purposes. Defendant's past and ongoing acts and practices include but are not limited to:

102.     Defendant's representations that their services have characteristics, uses, and benefits they do not have, in violation of Civil Code, Section 1770(a)(5);

103.     Defendant's representations that their services are of a particular standard, quality and grade but are of another standard quality and grade, in violation of Civil Code, Section 1770(a)(7); and

104.     Defendant's advertisement of services with the intent not to sell those services as advertised, in violation of Civil Code, Section 1770(a)(9);

105.     Defendant's violations of Civil Code, Section 1770 have caused damage to Plaintiff and the other Class members and threaten additional injury if the violations continue. This damage includes the injuries and losses set forth above

106.     At this time, Plaintiff seeks only injunctive relief under this cause of action. Pursuant to Civil Code, Section 1782, in conjunction with the filing of this action, Plaintiff will notify Defendant in writing of the particular violations of Civil Code, Section 1770 and demand that Defendant rectify the problems associated with their behavior detailed above, which acts and practices are in violation of Civil Code, Section 1770.

Class Action Complaint                     28

107.    If Defendant fails to respond adequately to Plaintiff's above-described demand within 30 days of Plaintiff's notice, pursuant to Civil Code, Section 1782(b), Plaintiff will amend the complaint to request damages and other relief, as permitted by Civil Code, Section 1780.

### COUNT V

### Unjust Enrichment

108.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

109.    Plaintiff asserts this demand for relief against each and every Defendant named in this complaint in this complaint on behalf of himself and the Class.

110.    A benefit has been conferred upon Defendant by Plaintiff and the Class. On information and belief, Defendant, directly or indirectly, has received and retained information regarding Class Members' Internet browsing activity that is otherwise private, confidential, and not of public record, and/or has received revenue from the use and provision of such information.

111.    Defendant appreciates or has knowledge of said benefit.

112.    Under principles of equity and good conscience, Defendant should not be permitted to retain the information and/or revenue it acquired by virtue of their unlawful conduct. All funds, revenues, and benefits received by Defendant rightfully belong to Plaintiff and the Class, which Defendant has unjustly received as a result of its actions.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff and the Class respectfully pray that the Court enter judgment in their favor as follows:

1.    with respect to all counts, declaring the action to be a proper class action and designating Plaintiff and their counsel as representatives of the Class;

2.    as applicable to the Class *mutatis mutandis*, awarding injunctive and equitable relief including, *inter alia*:

    a.    prohibiting Defendant from engaging in the acts alleged above;

    b.    ordering an accounting and constructive trust imposed on the data,

1     funds, and other assets obtained by unlawful means as alleged above, to avoid dissipation,

2     fraudulent transfers, and concealment of such assets by Defendant;

3          c.     requiring Defendant to delete all data wrongfully collected and retained

4     through the acts alleged above;

5          d.     requiring Defendant to provide clear, conspicuous, accessible, and

6     accurate notice of its practices, instructions, and privacy choices for configuring and using

7     Toolbar;

8          e.     requiring Defendant to provide Plaintiff and the other Class Members a

9     clear, conspicuous, effective, and permanent means to decline to participate or suspend

10     participation in any Toolbar data collection activities, in any present or future iteration of

11     Toolbar;

12          f.     requiring Defendant to disgorge all ill-gotten gains to Plaintiff and the

13     other Class Members, or to whomever the Court deems appropriate;

14          g.     awarding Plaintiff and Class Members full restitution of all benefits

15     wrongfully acquired by Defendant by means of the wrongful conduct alleged in this complaint;

16          h.     awarding Plaintiff and Class Members full compensation for all costs

17     arising from Defendant's wrongful conduct;

18      3.     for a preliminary and permanent injunction restraining Defendant and

19     Defendant's officers, agents, servants, employees, and attorneys, and those in active concert or

20     participation with any of them from:

21          a.     acquiring any information about Plaintiff's or Class Members' activities

22     on the Internet without fair, clear and conspicuous notice of the intent to transmit information,

23     including a full description of all information potentially and/or actually available for

24     transmission;

25      4.     awarding damages, including statutory and punitive damages where applicable,

26     to the Class in an amount to be determined at trial;

27      5.     awarding Plaintiff reasonable attorney's fees and costs;

28      6.     awarding pre- and post-judgment interest; and

1         7.    granting such other and further relief as the Court may deem just and proper.

2    Respectfully submitted,

3    DATED: November 5, 2010           KAMBERLAW, LLC

4                                       KAMBERLAW, LLP

5                                       By:

6                                     AVI KREITENBERG
                                      One of the Attorneys for Plaintiff,

7                                     individually and on behalf of a class of
                                      similarly situated individuals

8

9    Scott A. Kamber
     skamber@kamberlaw.com

10   David A. Stampley
     dstampley@kamberlaw.com

11   KamberLaw, LLC
     100 Wall Street, 23rd Floor

12   New York, New York 10005
     Telephone:     (212) 920-3072

13   Facsimile:      (212) 920-3081

14   Avi Kreitenberg (SBN 266571)
     akreitenberg@kamberlaw.com

15   KamberLaw, LLP
     1180 South Beverly Drive, Suite 601

16   Los Angeles, California 90035
     Telephone:     (310) 400-1050

17   Facsimile:      (310) 400-1056

18   Attorneys for Plaintiff

19

20

21

22

23

24

25

26

27

28

1

**JURY TRIAL DEMAND**

2

Plaintiff hereby demands a trial by jury of all issues so triable.

3

Respectfully submitted,

4

DATED: November 5, 2010

KAMBERLAW, LLC
KAMBERLAW, LLP

5

6

By: _____
AVI KREITENBERG

7

One of the Attorneys for Plaintiff,
individually and on behalf of a class of
similarly situated individuals

8

9

10

Scott A. Kamber
skamber@kamberlaw.com
David A. Stampley
dstampley@kamberlaw.com
KamberLaw, LLC
100 Wall Street, 23rd Floor
New York, New York 10005
Telephone:      (212) 920-3072
Facsimile:      (212) 920-3081

11

12

13

14

15

Avi Kreitenberg (SBN 266571)
akreitenberg@kamberlaw.com
KamberLaw, LLP
1180 South Beverly Drive, Suite 601
Los Angeles, California 90035
Telephone:      (310) 400-1050
Facsimile:      (310) 400-1056

16

17

18

19

Attorneys for Plaintiff

20

21

22

23

24

25

26

27

28

Class Action Complaint                    32